1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MARK POTTER,

                                    Plaintiff,

        vs.

CHEX SYSTEMS, INC.,

                                    Defendant.

CASE NO. 13cv2272-LAB (NLS)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR LEAVE TO AMEND**

On September 18, 2014, the Court dismissed Plaintiff Mark Potter's complaint without prejudice. Because it was not clear whether Potter could successfully amend, the order (the "Dismissal Order") directed Potter to file an *ex parte* motion accompanied by a proposed second amended complaint (the "SAC"), showing how the SAC could cure defects identified in the order.  Potter now moves for leave to amend by attaching a proposed SAC, and also adds a new claim under the Fair Credit Reporting Act (FCRA).[1]

## I.      Legal Standards

After a complaint is dismissed, leave to amend is ordinarily granted. *See* Fed. R. Civ. P. 15. But leave to amend need not be granted if the amended complaint would not withstand a motion to dismiss. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.

_____

[1] Potter failed to comply with the Dismissal Order, which required that the body of his *ex parte* motion not to exceed five pages. While the Court will review the current motion in its entirety, the Court admonishes Potter to observe page limits in the future.

1998). While "there is a policy that favors allowing parties to amend their pleadings . . . a district court may properly deny such a motion if it would be futile to do so." *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995).

When determining whether a complaint should be dismissed, the Court accepts as true all allegations of material fact in the complaint and construes them in the light most favorable to the non-moving party. *See Cedars-Sinai Med. Ctr. v. Nat. League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). But "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

**II.   Discussion**

The SAC brings two general claims. It alleges that Defendant Chex Systems ("Chex") failed to properly remove negative information from Potter's credit report; and that Chex failed to properly provide information regarding the procedure used to determine the accuracy and completeness of that negative information.

Potter admits he overdrew from his U.S. Bank account, which U.S. Bank closed. (SAC, ¶ 16.) Potter "immediately" paid off his debt of $577.61—after nineteen days. (*Id.*, ¶ 17.) Two years later, Potter discovered that Chex issued a consumer report reflecting U.S. Bank allegedly reported "Account Abuse." (*Id.*, ¶ 23.) Potter believed this was inaccurate because he already paid off the overdraft. He also claims that U.S. Bank assured him on many occasions the information was inaccurate and not supplied by U.S. Bank. (*Id.*, ¶ 3.)

Potter, through a series of letters, unsuccessfully attempted to have the "Account Abuse" language removed from his credit report. (*Id.*, ¶ 26.)

The Court has already ruled on many issues presented here, and the reasoning and analysis of its Dismissal Order (Docket no. 20) is incorporated by reference into this order. That reasoning is not repeated here, except as needed for clarity.

**A.    Proposed Amendments**

The proposed SAC introduces few substantial amendments. One group of amendments alleges that U.S. Bank did not provide the information that Chex included in its current consumer report, denied the accuracy of this information, and instructed Chex to remove the "Account Abuse" language from its consumer report. (SAC, ¶¶ 2, 23, 48.)

In another group of amendments, Potter alleges that Chex failed to properly verify the information on his credit report and that Chex's investigation was untimely. In particular, Potter alleges that Chex failed to investigate the matter until on or after February 27, 2013. (*Id.*, ¶¶ 38, 39.)

Finally, Potter seeks to raise a new claim under § 1681i(a)(6)(B)(iii), alleging that Chex failed to properly disclose how it obtained the information on Potter's credit report in accordance with that statute.

**1.    Claims Arising From the Inaccuracy of "Account Abuse"**

To establish the liability of a credit reporting agency ("CRA") for reporting inaccurate information, a consumer must first show that the CRA prepared a report containing inaccurate information. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1999). Here, that means Potter must plead facts showing that the report Chex prepared contained inaccurate information. The Court has already determined that Potter's behavior can fairly be called "Account Abuse," regardless of whether U.S. Bank reported it as such. It also bears emphasis that U.S. Bank was apparently so dissatisfied with Potter's failure to satisfy his overdraft that it closed his account.

The FCRA does not require that accurate negative information be removed from credit reports merely because the consumer disagrees with the language used. (*See* Dismissal

Order, 3:20–23.) It should also be remembered that credit reports serve an economic purpose and are not required to report a consumer's credit history in the best possible light. *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Cahlin v. Gen'l. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)). A great part of the purpose of credit reports is to give potential creditors complete information they can use when deciding whether to extend credit. *See id.* Potter has yet to explain why the phrase "Account Abuse" inaccurately describes his behavior, nor does he identify any other inaccuracy.

Potter instead claims that as a CRA, Chex lacks the authority to choose how to present information provided by a furnisher like U.S. Bank. He contends that *Steward v. Wells Fargo Bank, N.A.*, 2011 WL 3207037 (D. Minn. June 10, 2011) is distinguishable, and in fact stands for the proposition that account abuse is determined by the furnisher of information.  He further claims that the furnisher of information has the sole discretion to define activity amounting to "Account Abuse." This is incorrect. *Steward* merely noted that the furnisher did describe what the consumer had done as account abuse, without holding or suggesting that the furnisher of information has the sole power to decide how to characterize the facts.  It is worth remembering that the FCRA contemplates that CRAs will, to some extent, evaluate the information furnished to them. For example,15 U.S.C. § 1681(a)(3) mentions that "[c]onsumer reporting agencies have assumed a vital role in assembling and *evaluating* consumer credit and other information on consumers." (emphasis added). The mention of CRAs' role in "evaluating" credit information would make no sense if furnishers of information had the sole discretion to determine what language appears on a credit report.

Furthermore, giving furnishers sole discretion to determine the significance or meaning of the information they furnish would result in credit reports consisting of a patchwork of furnishers' own individual evaluations of consumers' behavior. This would make credit reports less consistent and fair. By way of example, one bank might deem a small overdraft that a consumer paid off quickly to be account abuse, while another might not deem

a much larger overdraft left unpaid for a much longer period of time to be account abuse. Inconsistencies like this would make credit reports less fair to consumers and less useful to potential creditors. *See Carvalho*, 629 F.3d at 892.

The only hope Potter has of showing that Chex reported inaccurate information is to plead facts showing that what he did was not in fact account abuse. His conclusory allegations that what he did wasn't account abuse are not enough. Given the facts Potter himself has admitted to, the only way to do that would be to show that what he did was permitted by the terms of his agreement with U.S. Bank, and not an abuse of his account. For example, if he had an overdraft agreement with U.S. Bank and his account was closed by mistake, he could plead those facts. But assuming the terms of his account didn't allow him to overdraw his account for an extended period of time, Chex's decision to characterize it as "Account Abuse" cannot be said to be inaccurate.

The only other quibble Potter raises is whether it is accurate to say, as Chex did on Potter's credit report, that U.S. Bank reported account abuse. That statement on his credit report is ambiguous; it could mean that U.S. Bank reported activity that amounts to account abuse, or that U.S. Bank itself said Potter committed account abuse. Assuming Potter's actions could be fairly described as account abuse, the information is accurate. But even construing the statement to mean that U.S. Bank called it account abuse, there is no showing of harm. The only inaccuracy would be which entity decided to call it account abuse. Here, it is the mention of "Account Abuse" that hurt Potter's credit, not U.S. Bank's opinion of what Potter did.

Because it is not absolutely clear Potter cannot plead facts showing he did not commit account abuse, he will be given leave to amend once more. But his amended complaint must plead facts showing that his actions could not fairly be called account abuse.

### 2.    Timeliness of Chex's Investigation

Potter claims that Chex violated the FCRA by failing to timely investigate his dispute. But § 1681i(a)(1) only requires Chex to conduct a reasonable investigation to determine whether the disputed information was accurate, and either confirm or delete it within thirty

1    days. (*See* Dismissal Order, 4:15–19.) For there to be a violation, Chex must have injured
2    Potter. But Potter has not shown his credit report was inaccurate, nor has he alleged an
3    injury from any late investigation. Instead he repeats the same allegations he made in the
4    FAC, which the Court already found to be insufficient.

5              **3.      § 1681i(a)(6)(B)(iii)**

6              Potter seeks leave to add a new claim under § 1681i(a)(6)(B)(iii). Specifically, he
7    claims that Chex didn't provide full and accurate information explaining who at U.S. Bank
8    verified that "Account Abuse" was accurately reported.  Potter also alleges that he did not
9    receive a response to his request for this information until eight days passed, and cites
10   § 1681i(a)(6)(B)(iii) as requiring such a response. But this statute requires a consumer
11   reporting agency (CRA) to provide

12             a notice that, if requested by the consumer, a description of the procedure
             used to determine the accuracy and completeness of the information . . .
13             including the business name and address of any furnisher of information
             contacted in connection with such information and the telephone number of
14             such furnisher, if reasonably available.

15   *Id.* Here, despite Potter's claims to the contrary, Chex provided this information after the
16   completion of Chex's re-investigation. (*See* SAC Ex. 5.)

17             Potter believes this section requires that Chex respond within five days after the
18   request for information was made, but this section does not include such a requirement. He
19   likely intended to reference § 1681i(a)(6)(A), which requires a CRA to "provide written notice
20   to a consumer of the results of a reinvestigation under this subsection not later than 5
21   business days after the completion of the reinvestigation." Potter claims that Chex  reported
22   the results of its reinvestigation eight days after he requested this information (in fact, six
23   business days). But this isn't what the statute requires; the results  must be reported not later
24   than five business days *after the completion of the reinvestigation. Id.* The new claim is
25   therefore meritless and leave to add it will be denied.

26   **/ / /**
27   **/ / /**
28   **/ / /**

**III.     Conclusion**

For the reasons set forth above, the Court **GRANTS** Potter's leave to amend the claim alleging Chex inaccurately reported "Account Abuse," but **DENIES** leave to amend all other claims.

No later than **fourteen calendar days after this order is entered in the docket**, Potter may file a second amended complaint whose sole claim is that Chex inaccurately reported that U.S. Bank had reported Potter for account abuse. This claim must be supported by factual allegations — not conclusions — showing that what Potter did was permitted by the terms of his account, and could not fairly be called account abuse.

A second amended complaint that does not comply with this order is subject to being stricken. If Potter does not file a second amended complaint within the time permitted, or if he files one that does not comply with this order, this action will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED:  September 8, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

- 7 -

13cv2272